Ruffin, Judge,
 

 Dissentiente.
 
 — Although this case goes back to a new trial upon one of the exceptions, yet, as some of the other points are of general consequence, and have received the deliberate consideration of tlie court, we feel it a duty to pronounce the opinions formed on the whole case.
 

 The conduct of the judge is impeached upon both branches of the act of
 
 1796, (Rev. c. 452.)
 

 It is alleged, first, that he violated that statute by not stating in a full and correct manner to the jury, all the facts given in evidence.
 

 The case stated in the record, contains an admission by the judge, that ho did not recapitulate all, nor near all the testimony ; that his method of summing up was by reciting fully the testimony of the principal witness for the state, and selecting such parts of the residue of the testimony, both on the part of the state and the prisoner, as he deemed important; and particularly, such portions of it, as in his opinion, tended to support or contradict that witness. The case further states, that at the request of the prisoner’s counsel, the judge supplied some of the omissions in his charge, as first delivered, by mentioning and commenting on several facts, which he had not before thought it material to call to the attention of the jury; and that, although he did not then mention all the testimony, he did not refuse to_do as to any part thus requested.
 

 
 *495
 
 It
 
 is
 
 contended, that the act of 1796 is susceptible of a construction literal only ; and thus construed, that it lays down an imperative and exact rule of duty, to be observed in every case.
 

 That this argument is not correct to its whole extent, is established by the case referred to at the bar.
 
 (The State
 
 v. Morris.) That is an authority, that a judge is not bound to charge on the facts, that being a matter left to his discretion. The opinion adds indeed, that if the judge does charge the jury, he must do it according to the rule laid down in the act. That was not the point of the decision. If it were, it would bo conclusive upon us now. And even as an incidental remark, falling from Chief-Justice Taylor, it is entitled to, and receives great respect. We do not however, concur in it; and I am persuaded, that had the point come directly into judgment, and thus called for those deliberate reflections of his mature mind, which he always bestowed on those questions, upon which the rights of parties were determined, we should now have the advantage of his authority for the conclusion at which we have arrived.
 

 The powers and duties of a judge, in giving a charge at the common law, and the aid derived from it by the jury, were fully understood and clearly expressed by the Chief-Justice. And this duty, both in its performance at all, and in the manner of its performance, was felt by him to be discretionary. It depends of necessity, he says, on the circumstances of cacii case, whether the judge’s aid would be of any efficacy. The evidence may be so equally balanced, that it would be unsafe for him to interfere; or the case may be so plain and intelligible, as to render his interference unnecessary. This necessity appears to us to be an equally good rule for the construction of the act, as for the principle adopted at common law. The rule being founded in necessity, has no limit or restriction, and in its nature can have none.— The great reliance indeed for truth in the verdict of a jury, is on the intelligence, integrity and independence of the jurors. But while they are deemed competent to that end, experience and the knowledge of mankind pro-
 
 *496
 
 (luce the conviction, that, unused as they arc to judicial enquiries, often depending upon artificial reasoning, they are more competent when aided by the more extensive knowledge and more perfect experience of a judge, versed in human affairs, accustomed to consider, discuss and digest masses of complicated evidence, to separate the material from the immaterial parts, and to combine the former so as to display the full force of each and all its parts. There is but little danger, that the complaint now made, can be justly urged against a judge. — that he did not go fully into the evidence. Not only his usefulness, but his character much depends on it ,* and it is believed, that no judge ever refused upon the request of the jury, or even that of the party, where the purposes of justice could be in the least promoted by it. But the real point of controversy, often and generally depends on a very small portion of the. testimony introduced. In the course of a trial, points made upon prolix and complicated documents, or after the most wearisome examination of witnesses, are abandoned, sometimes expressly, but oftener tacitly, because not sufficiently raised by the proof adduced, or answered by fuller proof on the other side. Counsel themselves, who have industry enough to discover, and sagacity to perceive the point really in dispute, do not feel their way through the cause in the dark', laying hold of every intervening object, material and immaterial, but bring that point to the light, establish its character, and press the evidence relevant to
 
 it;
 
 and in so doing, best serve the interests of the party and the purposes of justice. A burden which the counsel thus takes away from the court and jury, the judge cannot be bound to re-assume. To advert to every thing thathas thus occurred during the tidal, though not pressed by the party, though yielded by him, immaterial or absurd, would be a harmful consumption of time, obscure the truth, and confound the minds of the jurors. And it is not possible to lay down any rule, hut one of two: either that it must be left to the sound discretion of the judge himself to determine where, and on what circumstances he will animadvert; or, that he must notice and
 
 *497
 
 comment upon
 
 all;
 
 for who else can determine which was materia] or immaterial ? Every body, who knows any thing of trials, knows that there are in every trial many details of testimony upon immaterial matters, and much impertinence of interrogatory and answer, which it can serve no purpose to sum up, and which in practice, are always disregarded. It is of necessity so.
 

 The act of Assembly was not meant to alter the rule. It professes to he declaratory. It could not mean to declare that to be existing law, which all the world knew to he the contrary. The first clause does abridge an ancient duty of the judge, to advise the jury upon the weight of evidence, and restrain him from expressing an opinion, that a fact is sufficiently proved. But the charge was not confined to the weight of evidence, nor was that its most material part. In custom and utility, it extended to all the other important aids before mentioned, which the jury could receive from the judge. This the legislature knew and properly appreciated. The second clause was then added, not to create a new and substantive duty on the part of the judge, hut solely to prevent such a construction of the first as should in any wise interfere, either in the way of enlarging or curtailing any of those functions usually exercised, or those duties usually performed, other than saying whether the proof of a fact was full or sufficient. Hence, this clause begins with “ but,” that is, notwithstanding the previous enact ment, and continues,it is hereby
 
 declared to be,”
 
 that is, declared that it is, and shall continue to he, “ the duty of the judge to state in a full and correct manner the facts given in evidence.” If taken to bo an enacting statute, enjoining positively a duty in the terms used, it is absurd
 
 ;
 
 for it requires an impossibility. In giving a full and correct statement of the facts in evidence, there can, in this sense, be neither a more nor a Jess. In the whole circle of duties, to the performance of winch a judge is called, there is not perhaps one, to the due performance of which, greater abilities and a happy temperament and elocution, are more necessary, than this of summing up to a jury. It often calls for the highest efforts of the
 
 *498
 
 most vigorous natural faculties, improved by education, informed in professional and general learning, practised in forensic debate and judicial investigation. It cannot be meant, that the least man should fully and correctly perform that to which only the greatest is equal. Coupling in the same sentence this duty with that of declaring the law arising upon the facts, does not put them both on the same footing in this respect. The subjects are distinct and of different natures. This last provision is strong to shew, that it was not intended to introduce a new rule in either
 
 respect;
 
 but to leave the obligations to sift and collate the evidence, and to decide the law, as they were before. It was before and always, the duty of the court to declare the law, and it needed no legislative authority to make it so. That in its nature is a definite thing. It may be done in direct terms by any body ; and an error is subject to easy detection, and ready correction, by a superior tribunal. The act continues the duty as it then was. So with the other. It might be held otherwise, if it were possible to lay down any certain rule upon the subject. But the ground of the discretion at common law being indefinite, is that the duty is undefinable. The same reason controls the construction of the statute, even if it be considered as being an enacting one. The charge to the jury, therefore, must be left, as it always has been, to the discretion of the judge ,* the occasion to his conscience' — the manner to his ability. The only exception is such a plain departure from impartiality in collating the evidence, as of itself to convey to the jury an impression of the judge’s opinion as clearly as an explicit declaration would. If it were possible to make such a case appear, in its true light in the record brought here, this court would be bound to set aside the verdict.
 

 This the majority of the court thinks to be the plain Sense of the act, and should not have deemed this reading of it necessary, but for the
 
 dictum
 
 in the
 
 State
 
 v.
 
 Morris,
 
 and the zeal manifested at the bar in the argument of this case, and a difference of opinion amongst ourselves, Which led us to suppose, that possibly we might before
 
 *499
 
 have misapprehended it. We are how satisfied, that tiiere is no medium between the rule of the common law and one which shall seal the mouth of the judge alio-gether; a measure, which will probably be thought of, when an appeal shall be allowed from the Superior to the County Court, and which would imply a reproach unmerited, I believe, as it is derogatory, to the intelligence and the virtue our fellow-citizens, who sit as jurors in the Superior Courts.
 

 It is alleged next, that the judge violated the same statute by expressing his opinion upon the facts. If this be true, the verdict must be set aside.
 

 The case stated in the record, does not set forth the words of
 
 the judge,
 
 which are complained of, as being an expression of opinion
 
 ;
 
 nor does it set forth, that in fact the judge did express an opinion. On the contrary, the presiding judge overruled the motion for a new trial, because he was unconscious of having thus invaded the exclusive right of the jury. It does not then appear affirmatively, that the judge did err, as is alleged.
 

 But it is insisted, that the case is so stated in this respect, as to preclude this court from examining into it, and therefore, there must be a new trial. The argument is, that the judge cannot say in general terms, that he did not express an opinion upon the facts, but must set forth the evidence and his comments on it; much less can he say he is not conscious of having done so; for the rights of the party depend upon the fact, and not upon the motives of the judge, or his inadequate perception of his duties or his errors.
 

 It will be perceived, that this argument is not directed against the error which was alleged in the Superior Court to have been there committed by the judge, and from which this appeal is taken. It is not an error committed in deciding the cause, but in the method of stating that decision. Error's of the former kind, are those which it must be supposed an appellate tribunal is constituted primarily to correct. And it seems to the court, that our jurisdiction is necessarily confined to them. For we have no means, but the statement of the record,
 
 *500
 
 of ascertaining whether the easels truly or untruly, perfectly or imperfectly set out; and what we find there, we must say happened, and cannot say that any thing else did. it is argued, that as the judge states the case, or at all events, admits it, if drawn up by counsel, or such parts of it, to bo inserted in the record as he chooses, that the case stated must purport to be a full statement, else the judge will have it in his power to keep all his errors from the revision of this court. This consequence is true, but the question is not what the judge of the-Superior Court ought of his own motion to do, nor what provisions it would be wise in the legislature to adopt to compel him to do the party right; but what jurisdiction is by law conferred on this court — whether we can go out of the record for any purpose? Suppose a judge of the Superior Court, instead of stating the case partially, should refuse to state any, and refuse to allow an appeal, or the prayer for one, to bo entered of record, could this court ascertain those facts, and give a remedy by reversing the judgment ? Certainly not.
 

 The objection assumes, that it is the province of the judge to put the exceptions down in writing, and set forth
 
 the facts
 
 on which it is founded, and not of tho party who alleges the exception. I say this is assumed, because certainly he whose duty it is to draw up the case, cannot complain that it is imperfect. The duty of the judge to admit the truth to be stated, as far as the party thinks the same to be material to him is, doubtless, both an official and moral one. But that the labor of preparing it does by law dr in reason devolve on him, is more than doubted. Tho only statute upon the subject is that of 1799. (Rev. c. 520.) That authorises the judge to make up
 
 a case,
 
 or to cause one to he made by the counsel in court, under the direction of the judge. No appeal is given by the act. The only questions brought up were those on which the judge or judges doubted, and they were sent to a conference for tho satisfaction of the judge himself. He, therefore, as best knowing his own mind, might well be expected to put clown the question which he wished resolved, and
 
 *501
 
 that required neither much time nor labor, and consequently could not interrupt bis other duties. But even then he might impose the task on the counsel of the parties. In practice, a difficulty has seldom, if ever, arisen.. The judge or the counsel has drawn out the case according to their mutual convenience. Finding • the system, as thus in use, to operate beneficially, the necessity did not occur to the legislature, when passing the acts of 18Í0 and 1818, allowing appeals, for providing by whom the party’s exception should be written, or giving any means for compelling the judge to put the matter thus written, if true, upon the record. In the absence of legislative pz-ovisions, this court is obliged to decide upon reasons of propriety and general convenience, and place the duty on those to whom those reasons point. As a matter of personal labor, the parly and not the judge, ought to perform it. But the public interests constitute a preponderating argument, which can leave no doubt. Appeals are now, as they ought to be, matters of right. Imposing it on the judge as his business to prepare the cases, will put it in the power of one perverse suitor or capricious counsel, to arrest all other business, and engross the judge during the term, in drawing up reports in perhaps the first or second cause called for trial. If it then be also true, that the record as drawn up by the judge must set out the whole case, the evils would be intolerable
 
 ;
 
 for although every exception might not make that necessary, yet in every case it would bo in the-power of the party to make the exception now under consideration, that tlio judge bad expressed an opinion, and then the judge must write out all the evidence, and all his charge, or state falsely, that he had set them down, when he had not. The judge would bo harassed at the will of the person against whom ho liad decided, and this only at the poor risk of paying costs in .this court $ other suitors would be indefinitely delayed
 
 ;
 
 and the records would he unnecessarily, but unavoidably prolix. It is enough to require the judge to admit the party’s statement to record, if true, and to reject it if not true. And the party cannot object to the statement, because it must be taken in
 
 *502
 
 this court, to be bis own — prepared by him or for him. Even if it appear to be the personal act of the judge, it must be presumed to have been satisfactory to the party, (under the provisions of our law,) or that he would have framed another, which, if true, the judge would have adopted. And in this case, that presumption seems to be consistent with the fact, for the objection in the Superior Court was made in terms as general as possible, without any specification, and has been sufficiently met by a denial in terms as general.
 

 There are perhaps considerations applicable more directly to the question as to the responsibility of the judge. For admitting that the duty be on the judge, and that he perform it imperfectly, the question remains, can this court reverse the judgment, when no error appears, and this much only is seen, namely, that for all that docs appear, there may have been an error in the decision. The appeals first known in this state at common law, were those on which a trial
 
 ele
 
 novo, was to be had. The first verdict was abrogated, the merits stood indifferent ; the appellate court was to try and determine the cause upon the whole case as there made, without reference to what it was in the court below. Appeals had so long and familiarly been regarded in this light, that it is not surprising, that upon appeals being first allowed to the Supreme Court, the difference was not attentively considered. Early after this court was organised, new trials were ordered, because the case was not stated, or not sufficiently stated. But in others, as in
 
 Frazier
 
 v. Felton, (3
 
 Hawks
 
 231,) the contrary was held. And more recently in several cases, an appeal has been treated as being in the nature of a writ of error, operating as a
 
 supersedeas
 
 to the judgment below, and the case in the nature of a bill of exceptions.' The verdict, and in some respects, the judgment are not annulled. If erroneous, the latter has to
 
 be reversed here,
 
 and the former set aside. The merits do not stand indifferent. It is a fair presumption, that the instructions in matter of law were right. And every presumption is made in favor at least of a verdict, as determining the merits. These
 
 *503
 
 presumptions must stand, until overthrown by facts distinctly appearing. In no country, I believe, in the world is it otherwise, where causes are not reheard, but barely reviewed — certainly not in any proceeding, with the assistance of a jury to determine facts. It is no answer to this reasoning to say that the party will bo without remedy. This, by appeal, must be also proved to be the proper remedy. It may be, that there is redress for the party against the judge. That is not for us to determine at present. Certainly too, the judge is responsible in his character, and obnoxious to punishment as a public offender, who refuses to insert the facts on the record, or does
 
 it
 
 untruly to the prejudice of the party. The legislature seems to have thought those responsibilities a sufficient guarantee of fidelity, and as far as our experience has extended, the confidence was not misplaced. If they prove insufficient, the legislature alone can supply others. If indeed our present statutes had given to this court other means of getting the facts placed before it than by a statement
 
 in the record,
 
 the court could and would have founded a remedy on the statute, as has been done under that of 13
 
 Ed. I. c.
 
 31, by a rule and a
 
 mandamus
 
 to the judge to certify the facts. But our law requires the case to be
 
 of record in the court below ;
 
 and the judge cannot alter that after his term. But were such proceedings in our power, this court could not reverse the judgment before the judge did certify; nor after that, upon facts contrary to those certified, or because the certificate did not appear to be full. If the inferior court were to withhold its decisions altogether from revision, the evil would hardly be greater than that of the superior travelling out of the record for a ground of decision. The discretion of such a tribunal, with no means for informing its discretion, would be intolerable tyranny; no verdicts would stand, nor any litigation be terminated.
 

 Being confined to the statements in the record, the court must say that it does not appear that the judge did give an opinion on the facts, and therefore, that there is no error in this respect.
 

 
 *504
 
 Thus far, the majority of the court concurs in this opinion, and the reasons given for it. It remains now to consider another exception, on which there is a differ-once of opinion, and 1 have the misfortune to stand, alone here.
 

 Upon the effect of the evidence of character, I think the error of the judge, if any, was on the side of the prisoner. I take the judge to mean, and that he must have been understood to mean, by the words “ positively sworn to,55 sworn to directly by witnesses believed by the jury. In that caso, I think evidence of character lias
 
 no
 
 weight. I conceive, character is a circumstance, which cannot repel the positive and affirmative statement of credible witnesses. In other words, that the character of the person cannot change or give color to the character of his acts, when these last arc satisfactorily established.
 

 The judge is more than supported, in terms, by respectable writers on evidence and crimes. Mr.
 
 Jlrchbold, (Crim. Pl.
 
 73,) lays it down, that “evidence of character can be of av'ail only in doubtful cases.” Mr. Starkie, (Evidence,
 
 Pt. 1
 
 35,) says, that “a presumption from good character is too remote to weigh against evidence which is in itself satisfactory, and ought never to have any weight except in doubtful cases.” These writers only follow those who have treated the subject before them, and seem fully to sustain the judge in adopting the rule, at least to the extent ho did. I think he Is equally sustained by principle.
 

 Although there is no certain test of truth to each individual but his own senses, yet when one is called on to determine, upon human testimony, how the truth is as to a particular fact, not the object of his own senses, he must proceed on that testimony as if it were the certain means of determining the enquiry. He must do so, not only because by the universal sense of mankind, (founded on a general experience that a disinterested person will, under the sanction of an oath, ordinarily depose to the truth,) such testimony has been held to be means adequate to the ascertainment of truth,' but be
 
 *505
 
 cause it is the only means in our power. If the interests of society would allow the determination to be avoided, it would be different. Each person might tiien claim the evidence of his senses before he pronounced his opinion affirmatively, that the fact was the one way or the other. But our obligations to each other will not suffer us to evade a decision. The tribunals must act, and they are obliged to decide without that highest evidence, their senses. In coming to a decision, they must assume that the means by which the truth may be best attained by them — by which alone they have it in their power to attain .it, are means positively sure and certain of determining the question of fact. When therefore, the testimony of a witness is affirmative, positive and direct, and it is not contradicted by the testimony of another witness, or the credit of the first witness is not impeached, there is no opening for doubt, unless we say, not only that there is no absolute certainty, but that wo roust act, or are at liberty to act, as if every thing were absolutely uncertain — which is inadmissible. There is in such a case-nothing, in the sense of weighing the testimony, to be left to the tribunal — whether judge or jury — to whom it is addressed ; for there is no oilier relation touching the same fact, with which to compare it — nothing to he put in the other scale. It must be taken as entirely truc; because
 
 the law
 
 says, in .admitting it, that such testimony under the sanction of an oath, is a
 
 sufficient
 
 test of truth
 
 ;
 
 and if it bo uncontradictcd, it is a perfect test, being the only one.
 

 When a collateral circumstance is offered to shake a conclusion thus established, it is manifest that it is irrelevant to that end, if it be not inconsistent with the conclusion ; or at lcat, if it stand indifferent, admitting the circumstance to exist, whether the conclusion be true or false.
 

 Such a circumstance I conceive general character to he. I admit it to be absurd to say, that an honest man has committed a larceny. But the question is, whether such honesty is proved by a previous character for honesty, against direct proof of the very fact. It seems
 
 *506
 
 to me, that it has no tendency to repel the positive testimony, unless we say that it is as probable that one man with a good character will commit the crime of perjury, and is committing it, as that another man of like character, did commit the crime deposed to. This may be true in the abstract. But it is a principle upon which we cannot act. We are obliged to proceed on the contrary principle, or let all offences go unpunished, and all wrongs unredressed. Of all circumstances, that of character is the least satisfactory. It is extremely difficult to say, in the first place, what the character is. The estimation in which one is held by the world at large is not, like particular facts, capable of being certainly known. Still more difficult is it, if not impossible, to dive so deeply into the human heart, upon the most intimate acquaintance, throughout the longest period of intercourse, as to afford a reasonable certainty of gaining such a knowledge of the temper and disposition as would produce more than a faint inference, that there was not an original taint in principle, or such a latent infirmity of temper as might be surprised by sudden, though slight provocation, or such a secret love of wicked lucre, as could not withstand temptation and opportunity. Men constantly do things, which astonish those who knew them before; nay, the thought of which never, under different circumstances, entered their hearts; at the very imagination of which, they would, at other times, have been shocked. Such is our experience of the frailty of our nature. There can be nothing then in the evidence of the character of the accused, to
 
 contradict
 
 or
 
 discredit
 
 clear and direct testimony. It may be said then, that it is altogether irrelevant and ought to be rejected by the court as incompetent. So it ought, upon principle, in a clear case of affirmative evidence ; for the presumption founded on it is remote in every ease, and absolutely inadmissible against evidence otherwise plain and satisfactory. It always has been held so, as evidence of guilt. This could not be, if it were substantive evidence to establish the crime; but it would be admissible, as is every other circumstance tending to
 
 *507
 
 the conclusion. Neither in a clear case of positive testimony, does it tend to establish innocence. The hu-inanity of the law, admits it on behalf of the prisoner. But it cannot be laid down to a jury, that they have a right to make what use they choose of it. It would be wrong to be governed by it in any case in concluding
 
 guilt;
 
 it is therefore never admitted for that purpose. It is equally inconclusive, on the other side, in general; but in favor of life and character, it is admitted as a slight circumstance to operate where even slight cireum- . stances will avail — in a case of doubt and uncertainty. It cannot, in itself, make a case of doubt and uncertainty. Therefore, as I said, it is in principle incompetent, except in a doubtful case, and the court ought to reject it in every other. And so the court would as upon other questions of competency, if the court could determine the question upon which its relevancy depends, namely, the doubts entertained by the jury upon the substantive evidence to the fact. It is an anomalous case, and the evil arising from the admission of evidence when it ought not to be admitted, is sought to be corrected by advice to the jury, as to the state of facts in which that circumstance may be properly used. That, I think, was done here. The evidence was proper here, because there was a conflict in the testimony to the fact. If, upon that, the jury doubted, they could call in aid of the prisoner his good character, as contributing to the presumption, that he did not perpetrate a murder. If they had no doubts as to which of the witnesses swore to the truth, as between themselves, character could not raise them. And that, it seems to me, is what the judge said.
 

 I am therefore, opposed to a new trial upon either of the grounds.
 

 Per Curiam. — Judgment reversed.